I'm Lindsay Weston, appointed counsel for Merritt Timothy Ford. At the beginning, I'd like to acknowledge that this entire case is very troubling and disturbing from the deaths of the three members of this young family, Mrs. Ford, the three-year-old son, and the soon-to-be-born child, their brutal murder, and their subsequent arson of their bodies. It's equally disturbing that Mr. Ford, a young man of significant academic and athletic accomplishment, highly regarded by his family, friends, and co-workers, was convicted of this crime. This case is about the fact that it's equally troubling that Mr. Ford, after his jury trial, came forward, was able to produce significant new evidence that, linked with the evidence he presented at trial, could have raised a reasonable doubt that he was the perpetrator of the murders, and that the state court and the prosecution disallowed, prevented him from introducing this evidence. That's the problem. You're in federal court now, and it sounds to me as though you're simply re-arguing questions of state law. Where in the state process was a federal claim clearly articulated, and what's the federal issue now? Your Honor, the federal issue, first of all, is the court realizes Mr. Ford represented himself pro per in the district court, and I am bound by what was raised there. We acknowledge, Your Honor, that there is a very high threshold, there's a very high standard, that this court must employ to look at what the state court did, and that it must, the state court law must have violated, or the state court proceedings must have violated a fundamental constitutional right. To get here, he has to have articulated a claim in terms of a pretty precise federal term. Yes. And I think what we did, Your Honor, in the briefs, and what I'd like to articulate a little bit further today, is that the law or the federal statutes, the federal constitution that was violated, was essentially his right to raise a reasonable doubt. That the entire proceedings and the motion for a new trial, the evidence was such that by the denial of his right to present this new evidence, that he was precluded from raising a reasonable doubt as to his guilt. Now I think that it's an unusual situation in which the federal courts or federal habeas will look at a motion for a new trial unless, on newly discovered evidence, unless the denial of that is so significant, and the evidence is so significant, that it raises a fundamental due process right. In this case, the 14th and 6th Amendment right to, I believe, raise a reasonable doubt as to his guilt. Well, it seems to me that in the state court proceeding, they did give him the opportunity to have a hearing and to raise a reasonable question, a reasonable doubt, but the witness who would have testified took the 5th Amendment. And so then the question became, was it the obligation of the prosecutor to grant immunity and to require him to testify? And it seems to me that that becomes a discretionary determination by the prosecutor as to whether to grant that or not. And without that grant of immunity, he hasn't been able to raise a reasonable doubt. Your Honor, I'd like to, yes, that goes to the crux of what we're talking about. And also at this point, I'm going to, I'm not going to say concede, but acknowledge that we're not talking here in terms of the motion for new trial, the due process violation in terms of Mr. Ford's testimony at the motion for retrial or the affidavits of and testimony of his parents. I think that that alone, even if it were considered to be new evidence, would not justify a new trial. I think that's basically irrelevant. The focus of this case is the fact that Rockland Riggs' testimony stating that he and another individual cased the house within a week of the murders is what we're looking at. And that, taken in conjunction with evidence that Mr. Ford had no control over, suggesting that there had been a burglary, I'm talking about the unusual activity of cars seen in the area at the time of the murder, more specifically the testimony of Howard Wood, that he is certain that he saw an unusual car in the Ford driveway around 7.15 the morning of the murders. It's that testimony taken together that could have raised the reasonable doubt. I'm going to focus, first of all, Your Honor, if I can take it backward. Well, what's the California decision that involved an unreasonable application of federal law or was contrary to federal laws required by 2254D? What's the decision that you wanted to focus on? I'd like to look at the, in terms of the California decision, Your Honor. I'm going to look at People v. Hall, because I think what we're talking about in terms of the raising of the reasonable doubt, that the trial court did no analysis of Mr. Riggs's testimony in terms of how it could have raised a reasonable doubt. And therefore, the state court, the Court of Appeals, talked about this, which was they stated that Mr. Ford had to show that there was substantial, significant evidence that a third party was culpable of the murders. And I think that that's an incorrect statement of the burden that Mr. Ford needed to raise. And I'm calling the Court's attention in terms of my appellant's first volume of excerpts of records to page 76 and 77 of the district court's findings, because that's where, that adopts the state court decision. But it said, but even if Riggs's story had been found credible, it would have done nothing to prove that anyone other than the defendant had murdered his family. At most, it indicated that Will, a self-styled burglar, was checking out defendant's block as a possible crime scene a week before the murders. But the possibility that Will had the motive and opportunity to invade defendant's house on the day of the murders falls far short of evidence tending to prove that Will did so, let alone that he committed murders there. To win a new trial on the theory that a third party committed the crimes the new defendant was not mere speculation. And I think that incorrectly states Hall. Excuse me, Your Honor. Go ahead. It seems to me that the proposition you're arguing boils down to this. Somebody shows up for a new trial and says, I've got a letter here from one of my pals in state prison that exonerates me. And the pal comes in and takes the Fifth Amendment. Boom. Aren't you arguing that automatically the guy gets a new trial? No, I'm not, Your Honor. And I think what's very difficult about this case is that Mr. Ford, through his counsel and defense investigation, did every single thing possible they could to get this testimony before the trial court. And what they did, they could not have done any more. And that the testimony- But there was no sworn affidavit. There was nothing. There was no testimony. And so it seems to me that if we were to write an opinion in your favor, it would open the door to anybody coming in with an exonerating letter and then taking the Fifth Amendment. And what do you do? Well, Your Honor, I don't- If you don't allow it in, you get a new trial. I don't think that's the case, Your Honor. I think that this is- Why not? Because the circumstances under which Mr. Ford brought this information to the trial court were unusual and very narrow. We have two, and I say we, the district court had two lengthy, tape-recorded statements that were taken by the district court and presented to the trial court. They had two lengthy statements that Mr. Riggs then gave to the defense. The trial court ruled that he was unavailable. In order for the trial court to rule that he was unavailable to testify, the trial court, I believe, under the California Evidence Code sections and the prevailing caseload, had to find that he, with cause, asserted the Fifth Amendment. We can't just assert the Fifth Amendment willy-nilly. The trial court has the right to determine whether or not your Fifth Amendment right is correctly- I've never seen one of those. How do you run a hearing to tell whether somebody is properly asserting a Fifth Amendment? I've never seen one of those. Well, Your Honor, I- I've never even heard of one. I'm sorry, Your Honor. You have a hearing? If somebody says, I take the Fifth Amendment, I decline to testify on the grounds it might incriminate me, you can have, then, a hearing? No, Your Honor, I think if I misstated myself, excuse me, I'm a little nervous this morning. Excuse me, let me stop. Don't be nervous. It's just us.  Well, this is, you know, my- It's fine. This is a really disturbing case, and my client, obviously, is very concerned. His family, and I want to make certain that the correct information gets before the court. Can I just walk you back? Because I lost track. You were at 76 to 77, and I lost exactly where it was, because we're off now on the grant of immunity. But the thrust of what you were reading is that he says even if the trial, the district court adopts the statement that even if this supposedly exculpatory evidence came in, it was not enough to change the outcome. Well, Your Honor, the- So are you attacking that finding, or are you attacking the failure to grant immunity? Well, this comes in a package, and I think there's several steps. The final, I think the final step that we need to look at, and the final due process violation, is that the evidence that Mr. Riggs could have presented, and I believe would have been presented, was admissible if there were a new trial under Evidence Code Section 1230 as a declaration against that Mr. Ford committed the crimes. And what is the Supreme Court opinion that tracks your argument so we can comfortably say, given all that you've just said, this was an unreasonable application of either that opinion or that jurisprudence? I don't believe that there is a Supreme Court decision that says exactly that, Your Honor, but I believe that- And argue out that the statute says there's got to be. But there has to be, what we're talking about, is due process violation and fair trial, and the Sixth Amendment right to raise a reasonable doubt. We're not just talking about the Supreme Court decision, we're talking about the federal constitution. And we are aware, Your Honor, that, again, this is a very high standard. I believe that the district, the trial court, and the Court of Appeals erred. The Court of Appeals erred in not correctly applying Hall, which doesn't say that you have to show somebody else did it. The evidence needs to simply be able to raise a reasonable doubt, and in conjunction with the evidence that was presented by Mr. Ford at trial, which was outside of his ability to- So what do you think federal law required the California courts to do with all of this material that we're talking about? Well, I think it was an unreasonable application- I mean, I think- What were the California courts required to do with all of this? What I think the California court should have done, and what it did not do, and was therefore a violation of Mr. Ford's right to raise a reasonable doubt, was to grant him a new trial. They did not- Federal law mandated California had no option except to order a new trial. When this gentleman from prison came forward with a letter, no affidavit, nothing else. Your Honor, the federal court, in terms of reviewing this, needs to look at the fundamental fairness that was not given Mr. Ford by not allowing him to raise a reasonable doubt by having a new trial with the evidence that was available. That's why I'm worried that you're- to follow your line of thinking, says anybody who comes in with a letter from somebody in prison, get to a new trial. Federal law requires it. Mr. Ford came in with more than a new letter, Your Honor. He came in with significant evidence- California Court of Appeals says the story's not believable. I don't think that's correct, and I think the California court- That's what they said. They did say that, and they were wrong. They did not complete the entire analysis. They didn't look at the evidence that was presented at the trial, that there could have been a burglary, evidence outside the information or what occurred in the house, of strange parts. Even when California courts determined that the story is not believable, federal law requires a new trial. In this instance, the 6th and 14th Amendment do require it because this evidence was so significant and so compelling that to preclude the introduction of that evidence at a new trial- Federal law overrides a credibility finding by a state court. In this case, Your Honor, I think it does. I think that you can look at this and say that it was an unreasonable application of the facts in this case. It's also very disturbing that Mr. Ford and his counsel did every single thing that they could to bring this evidence before the court and were prevented by doing so by the prosecution. Mr. Rockland Riggs, when he presented this evidence, it was clearly against his penal interest to do so. He gave this information to the district attorney investigator and he was going to be sentenced the next day. She has two lengthy declarations. Mr. Ford brought Mr. Riggs to the court. The prosecutor could have done this and could have given him immunity and he did not do so. I agree, Your Honor, that this is an unusual case. I agree that the standard is very high, but this court has the authority in certain instances to look at a state court proceeding and say that it was so fundamentally unfair that we are going to reverse that proceeding. And I think because of the significant evidence that Mr. Riggs could have presented at retrial, which was admissible under evidence code section 1230, showing that another person could have prevented – could have committed the murders in conjunction with the evidence that was presented at trial, that this is the case in which the Federal court should say that the California courts committed a violation of Mr. Ford's due process right. I think I would like, with the court's permission, to reserve my next 3 minutes and 13 seconds for rebuttal. We'll hear from the other side. Thank you, counsel. May it please the Court, Justin Riley on behalf of the Attorney General for Appellant. The State of California in Penal Code section 1181 has set up requirements that a defendant must meet in order to receive a new trial on the basis of newly discovered evidence. The California Supreme Court in Delgado set up five factors for a trial court to consider in ruling on such a motion. Here, the trial court heard the evidence, including testimony from the defendant's mother, from the defendant, and also reviewed the contents of Riggs' proposed testimony. Is this the same trial court that conducted the trial? I believe it was. The California court of appeal, after a lengthy discussion of both the facts and law, decided that the trial court did not abuse its discretion in denying the appellant's motion for new trial. These decisions by the State courts were purely State law determinations of State law principles. As this Court was discussing with opposing counsel, the only way for a habeas court to review such a claim is if the appellant makes a showing that the decision involved If we were to conclude that this is a compelling case where the suggestion that this fellow Will was actually casing the neighborhood, it fits in with all of the other facts, that the defendant shouldn't have had the opportunity to put that before the jury, that he couldn't reasonably have found it out before that time, that he really, his trial was fundamentally unfair, what's your response to that? That his trial was fundamentally unfair? Well, that's what it comes down to, is, you know, that ultimately his first trial wasn't fair because he didn't have all of the appropriate evidence. Now he's got it. He should be given the opportunity to be tried by a jury with all of the evidence that would determine whether or not he really did commit this horrific act. No, I believe that the trial court in making its determination that it did not dovetail with the rest of the evidence and did not rise to the level of something that required a new trial. In this case, was there anything but circumstantial evidence against Mr. Ford? There was, no, there were no eyewitnesses to the murder. There were, you know, nothing like that, but the circumstantial evidence. Well, what about physical evidence? Such as DNA?  Such as DNA. Such as gasoline. Gasoline was found in his trunk on his, you know, throughout the house in the floorboard of his front passenger seat of his car. Where did the gasoline come from? Where did the gasoline come from? He – I don't understand the question, I guess. Did he have a lawnmower? He didn't have – he had a lawnmower. I believe it had gas in it. He had – he didn't have the gasoline container to go with the lawnmower. Where'd that go? He said his wife threw it away. First he said he threw it away, then he said his wife threw it away. I don't know where it went. Is that circumstantial or direct evidence? That's circumstantial. So, yes, it's – I believe it's all circumstantial, but it's pretty overwhelming circumstantial. And you say the trial court went through and analyzed how it didn't – this Riggs statement did not dovetail with the – with the evidence? That's correct. In denying the motion for a new trial. What do you mean by dovetail? I don't believe that was my term, but the way I understand it, I imagine it fits in with all the other evidence, doesn't contradict – if you'd like to define what you meant by dovetail. Well, I'm just trying to understand what you said. You said that the – I asked you a question, that's – because what seems to be in this case is that at trial, the – Mr. Ford tried to explain all of the circumstances about the gasoline and everything else, and then along comes this fellow Riggs who says, look – and there were cars – there were other cars in the neighborhood – and then Riggs comes along and says, look, I was with this guy Will and we were actually casing this neighborhood and we were actually sizing up this very house, and you don't – and so why does that not dovetail or is that – why isn't that consistent with corroborative evidence that's in the record in the first trial or proffered as part of the statement of others that are being brought forward on the motion for a new trial? Why is Riggs sort of so off the wall that it wouldn't fit into and be totally consistent with what Ford's defense was? It doesn't explain – it doesn't help to explain the other circumstantial evidence such as the gasoline in his car, the scratch on his face. Well, he's already explained that. Right. And so the question is, if that's a – you know, if that's a toss-up in the jury's mind and they resolved it beyond a reasonable doubt, absent some plausible evidence that there really was somebody else around, you don't think that would affect the jury's determination on a retrial or on a new trial? If the jury was presented with more evidence, I can't imagine denying that it wouldn't enter into their consideration. Do you have anything else you want to say to us? I don't. All right. Thank you. Thank you, Your Honors. Just briefly, Your Honor, I'd like to just revisit what you were discussing in terms of your concern or this Court's concern, rather, that if you were to grant this motion for a new trial, that it would open the floodgates for any letter from a prisoner, and then the trial court would have to grant a new trial. Again, I would like to reiterate that this is simply not a letter from a prisoner. Well, does the letter say anything other than somebody was casing the neighborhood? No, but then – The letter doesn't say, I'm housed with somebody who admitted the murder, or I know somebody who admitted the murder, it said we were simply casing the neighborhood. No, Your Honor. In fact, the evidence that was available to the trial court on which to base its judgment, and I believe, I maintain, was evidence that was admissible under 1231 at a retrial, was two lengthy tape recordings, and two lengthy statements from defense counsel and investigators going into detail about how this – how these events came – took place, the location. Did Mr. Riggs say, I know who committed the murder, the man confessed to me or something? No, he didn't. What he did say is I was with Will in this specific location at about 530 in the morning one week before the murder. Will was a self-described burglar. I know where it was. I know what the street looked like. I know what the house looked like. I know what Mr. Ford looked like. And one week later, there is a murder in the house, and there is evidence – aside from what occurred in the house – let's have a look at this evidence in the best light for the prosecution. If the prosecution considers Mr. Ford guilty and he was convicted, Mr. Ford certainly had control over what occurred inside the house in terms of staging a burglary, but he didn't have any control over what occurred outside of the house. And there is uncontroverted testimony by a very credible witness that there was an unusual car at 715 in the morning of the murders parked in the driveway of the Ford house, which certainly suggests that there could have been a person in there or persons in there committing a burglary. Now, I will grant you, if Rocklin Riggs' testimony was taken by itself, then it alone would not be the basis for a new trial. But taken in conjunction with other evidence that was presented to the trial court, it could raise a reasonable doubt. The unusual car testimony, remind me, was that in the first – in the actual trial or that came later? Yes, Your Honor. There were three – and the court is correct. Yes. I asked the compound question. Yes, Your Honor. There was three witnesses, a UC Davis nurse, a teacher in Stockton, and Mr. Woods, who is an engineer. At the trial. At the first trial. And, Your Honor, those – the entire testimony of that, I believe, is in the appellant's extents of records. That's okay. I just wanted to – So, yes, three witnesses testified as to unusual cars in the neighborhood. One – And in the driveway. One was in the driveway. Yes. So, anyway, the jury that convicted him heard all of that. Yes. So the missing piece now is Riggs to come in and say, now I can show you who might have been driving – Right. Or parking that unusual car. Exactly. That's what you're saying. Exactly. It needed to go before a new jury. The unusual car in the driveway was obviously not sufficient to support a reasonable doubt. Okay. But with Mr. Riggs' testimony, which is against penal interest, I maintain, under penal cause section – or evidence clause section 1231, it was admissible in a new trial. And in sum, this was such an egregious violation of Mr. Ford's right to raise a reasonable doubt that this is the kind of situation that the Federal court should step in and grant him a new trial. Thank you, Counsel. The case just argued is ordered submitted. Thank you. Thank you both. And we'll call the final case on the oral argument calendar for this morning, Reynolds v. Bonta.
judges: B. Fletcher,trott, Fisher